CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division “A”, for the Parish of Jefferson, wherein the Honorable Roy L. Price rendered judgment in favor of plaintiff and against defendant in the full sum of Four Hundred Twenty-Four Thousand, Fifty-Six Dollars and Twenty-Five Cents ($424,056.25). We affirm.
On March 5, 1981, Luke DiMattia was a passenger in an automobile that was struck from the rear by a truck owned by Gulf South Beverages, Inc. and driven by their employee, Earl White. Mr. DiMattia, complaining of back and neck pain, was seen that day by Dr. Joseph Rauchwerk who sent DiMattia to East Jefferson Hospital for a battery of X-rays. After conducting his examination, Dr. Rauchwerk concluded that DiMattia’s subjective complaints were consistent with Grade 1 myofascial lumbo-sacral strain superimposed on a preexisting degenerative joint disease and degenerative osteoarthritis of the lower lumbar spine. DiMattia was treated conservatively until March 26,1981, when he did not appear for a scheduled visit. Dr. Rauchwerk considered DiMattia to have obtained full benefit from the treatment and thus recovered.
However, because DiMattia felt he was not responding to treatment as he should, he sought further medical attention from Dr. Florence Jones. Dr. Jones first saw DiMattia on March 30, 1981 and began treating him conservatively. DiMattia had responded to treatment such that on June 1, 1981, Dr. Jones released him to return to T.L. James & Company, Inc. where he was employed as an auto mechanic. However, on June 3, 1981, DiMattia returned to her office complaining of discomfort in the right posterior neck near the skull after lying on his back on a pad while working under cars. Dr. Jones noted that, while there was some tenderness in that area, there were no corresponding muscle spasms or limitation of motion. Dr. Jones advised DiMattia this would probably clear with the passage of time and to return if he had further problems. DiMattia did not return until August 21, 1981, at which time his chief complaint was again the neck soreness described in the June 3 visit. This was DiMattia’s last appointment with Dr. Jones.
DiMattia next sought medical attention from the LaRocca Clinic where he initially saw Dr. Michael E. McCutcheon on September 4, 1981. On physical examination, Dr. McCutcheon found tenderness in and about DiMattia’s neck and lower lumbar spine. X-rays showed right-sided L-5 S-l tropism and segmental instability in the lumbar region between L4-L5 which Dr. McCutcheon believed to be due to degenerative lumbar disc disease. In the neck, Dr. McCutcheon found loss of normal or expected flexion and extension patterns at the C-4-5 motion segment. This, he thought, was indicative of mild cervical spondylosis, an abnormality of the cervical disc.
Dr. McCutcheon saw DiMattia three more times and on the last visit, January 5, 1982, DiMattia had mild complaints of neck *600 pain on both sides of his neck. As DiMat-tia had failed to have his prescriptions filled during the course of his treatment, it was Dr. McCutcheon’s impression that DiMattia’s symptoms were minimal, were not disabling, and that nothing in regard to his condition should keep him from working at his, job with no restrictions. Dr. McCut-cheon believed DiMattia’s pain was only intermittent and that continued visits would not be beneficial because DiMattia had not followed his instructions in regard to the medications. Dr. McCutcheon concluded that DiMattia’s symptoms did not warrant surgery at that time.
DiMattia continued to visit the LaRocca clinic where he was seen by Dr. Bruce Razza for three visits. Then, on February 20, 1982, Dr. Henry LaRocca saw DiMattia in Touro’s emergency room where he was complaining of uncontrollable pain in both his neck and back. DiMattia was admitted to the hospital as soon as there was an available room. On March 25, 1982, Drs. McCutcheon and LaRocca performed a lumbar laminectomy with a fusion, and then on April 1, 1982, Dr. McCutcheon performed a cervical fusion.
Prior to these surgeries, on November 18, 1981, DiMattia filed suit for damages against Gulf South Beverages, Inc., their insurer and driver, Allstate Insurance Company, and Earl White respectively. A trial on the matter was conducted August 6 and 7, 1983. At the beginning of that trial, plaintiff DiMattia dismissed his claims against Allstate Insurance Company and Earl White. Judgment was rendered on July 29, 1983 in favor of plaintiff and against defendant, Gulf South Beverages, Inc., in the full sum of Four Hundred Twenty-Four Thousand, Fifty-Six Dollars and Twenty-Five Cents ($424,056.25).
Defendant has appealed, asserting the following specifications of error:
that (1) the trial judge erred in his conclusions that the plaintiff’s disability was caused by the vehicular accident involving defendant; and that
(2) the trial judge erred in awarding an amount of damages which was excessive and unsupported by the evidence.
In his reasons for judgment, the trial judge stated that he had no problem in finding plaintiff permanently and totally disabled from his injuries incurred as a result of the accident. The trial judge based his conclusion upon the testimony of Dr. LaRocca, “Dr. LaRocca, qualified as an expert in orthopedic surgery testified it was his opinion that the accident of March 5, 1981 caused the pain, suffering, resulting surgical operations, and disability to DiMattia.” The appellant contends that Dr. LaRocca’s statement was taken and used out of context and that the record is totally devoid of any evidence whatsoever to support the trial judge’s conclusion. We disagree.
Plaintiff was seen and treated by Drs. Jones and McCutcheon and both were deposed well before plaintiff’s condition necessitated surgical intervention. Each agreed, at the time they were deposed, that plaintiff had problems with the spine that were either congenital or due to his age and were not incurred as a result of his accident. Plaintiff’s right-sided L-5 S-l tropism was congenital and his unstable lumbar region was due to degenerative lumbar disc disease attributable to arthritic changes and age. However, both agreed that the accident was the direct cause of the aggravation of those preexisting but dormant conditions. Dr. McCutcheon went further to state that the X-ray patterns he identified to be consistent with cervical spondylosis was directly caused by the accident.
Dr. LaRocca’s testimony was in complete harmony with the opinions of Drs. Jones and McCutcheon. While he clearly stated that the plaintiff’s dormant, preexisting conditions were not caused by the accident, Dr. LaRocca believed all of plaintiff’s pain and suffering were directly related to the March 5 accident.
Appellant would have this court construct the facts so that plaintiff’s surgeries were not caused by the accident but rather *601 were the natural result of the ongoing processes already present in plaintiff. Appellant points out that Drs. Jones and McCut-cheon’s findings relate the plaintiffs symp-tomalogy to developmental rather than traumatic causes and notes that the trial court made no mention of the testimony of any physician other than Dr. LaRocca.
Dr. Jones was deposed January 11, 1982 and Dr. McCutcheon, February 5, 1982. These depositions were taken well before plaintiffs condition necessitated surgical intervention; two months and 1 month, respectively. Dr. LaRocca testifying at trial, was the only physician to testify in regard to those surgeries and he clearly stated that he believed that they were caused by the accident.
Appellant tries to convince this court that between plaintiffs last visit with Dr. McCutcheon on January 5, 1982, when he showed only “minimal symptoms” and his admittance to Touro Hospital, some intervening cause occurred which ruptured plaintiffs lumbar disc and necessitated the surgeries. Appellant points to Dr. La-Rocca’s testimony that he could not be one hundred percent sure as to the exact cause of the disc’s rupture as support for his intervening event.
However, the burden was upon appellant to prove the existence of such an event. This he attempted to do when cross-examining plaintiff, but plaintiff could not recall any such event. Dr. LaRocca supported plaintiffs testimony by stating that his notes were void of any mention by plaintiff of a second traumatic event.
It is inescapable that the only physician who testified in regard to the surgeries unequivocally established the March 5, 1981 accident as the cause of the plaintiffs surgeries. Appellant has not demonstrated to the satisfaction of this court that the factual conclusions reached by the trial judge were clearly wrong. Accordingly, under the mandate of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), we decline to disturb these factual findings.
Next we turn our attention to appellant’s complaint that the amount of damages awarded by the trial court was excessive and unsupported by the record.
In addressing the quantum issues, we recognize that this court has a constitutional duty to review the law and facts particular to each case, thereafter determining whether the record shows clearly that the trial court abused its “much discretion” in awarding damages. La. Const, art. 5, § 10(B); LSA-C.C. art. 1934(3); Thibodaux v. Acme Truck Lines, Inc., 443 So.2d 716 (La.App. 5th Cir.1983). We are also aware that plaintiff is entitled to compensatory damages for all damages suffered directly caused by an accident which is the fault of another. Thames v. Zerangue, 411 So.2d 17 (La.1982).
Appellant argues that the Thirty-Three Thousand, Seven Hundred Eighty-Three Dollars and Eighty-Four Cents ($33,-783.84) awarded in medical damages for surgical procedures was error as those procedures were not caused by the accident. However, as we have already determined that those surgical procedures were causally related to the March 5,1981 accident, the award for the cost of those procedures was not an abuse of discretion.
Appellant secondly urges this court to disallow any award for loss of future wages as such loss was not caused by the March 5 accident. We have, however, already agreed with the trial court that plaintiff’s disabilities were caused by the accident in question, and plaintiff’s loss of future wages are a direct result of those disabilities. Accordingly, there was no abuse of discretion in awarding loss of future wages which are amply supported by the record.
Appellant thirdly asserts that since plaintiff returned to work periodically from June 1, 1981 through February 8, 1982, his symptoms attributable to the accident sub judice had manifested themselves for only three months. Accordingly, appellant argues plaintiff is entitled to lost wages only from the date of the accident to the date of his return to employment in June of 1981. As to the economic awards, the trial court *602 relied completely upon the testimony of Dr. Seymour S. Goodman, professor of economics at Tulane University, who was the only expert witness to testify. Dr. Goodman testified that in calculating plaintiffs total past economic loss, he took into consideration plaintiffs actual earnings in 1981 and 1982. It does not appear from the record that plaintiff was compensated in the award for past economic loss for the time he actually worked between March 5, 1981 and February 8, 1982. The reliance upon Dr. Goodman for awarding plaintiff past economic loss shows no abuse of discretion.
Lastly, appellant contends the award of Two Hundred Thousand Dollars ($200,000) in general damages to be an abuse of the trial court’s discretion. In determining such award, the trial court considered plaintiffs pain and suffering from the date of the accident, the multiple major surgeries taking place one week apart, present and future pain and suffering, and mental anguish. After a careful review of the record and in light of this court’s prior affirmations of awards, Thibodaux v. Acme Truck Lines, Inc., supra, we do not believe the trial court abused its much discretion in the amount of general damages awarded.
Appellee raises as error the trial court’s failure to award damages for proven employee-employer benefits, namely contribution of plaintiff’s employer into plaintiff’s profit sharing plan. Appellee failed, however, to raise this issue by an independent appeal or in an answer to appellant’s appeal as required by LSA-C.C.P. Article 2133. Cheramie v. Vegas, 413 So.2d 1343 (La.App. 1st Cir.1982). Thus appellee is without standing to raise such issue, but a cursory reading of the reasons for judgment clearly shows the trial judge included the profit sharing plan when determining the award.
Accordingly, for the above foregoing reasons, the judgment appealed is hereby affirmed at appellant’s cost.
AFFIRMED.
GAUDIN, J., dissents with written reasons.