478 So.2d 549 (1985)
Alvin FRANKLIN, Plaintiff-Appellant,
v.
OILFIELD HEAVY HAULERS, et al., Defendants-Appellees.
No. 84-677.
Court of Appeal of Louisiana, Third Circuit.
October 23, 1985.
Rehearing Denied November 17, 1985.
Writs Denied January 31, 1986.
*550 Robert Thomas, Lake Charles, Wm. Henry Sanders, Jena, for plaintiff-appellant.
Robert Cooper, Metairie, Voorhies & Labbe, Patrick Juneau, Jr., Allen, Gooch and Bourgeois, Raymond Jackson, III, Lafayette, for defendants-appellees.
Before STOKER, DOUCET, and KNOLL, JJ.
STOKER, Judge.
Plaintiff, Alvin Franklin, was injured on May 25, 1982, while he was moving a drilling rig for Cliff's Drilling Company, Inc. (Cliff's), in Vermilion Parish. Cliff's paid Franklin compensation benefits under the Louisiana Worker's Compensation Law. Franklin then sued Oilfield Heavy Haulers (Oilfield), the company which Cliff's hired to move the rig, and Hicks Construction Company (Hicks), with which Oilfield had contracted for the furnishing of two cranes with operators and swampers. Cliff's intervened under LSA-R.S. 23:1101, which allows an employer to recover from third persons the benefits paid to its employee. Hicks and Oilfield filed third party demands against each other for indemnity or alternatively for contribution. Each alleged negligence on the part of Franklin *551 and Cliff's. The demands against Cliff's were dismissed on exceptions of no cause of action. Thus, Cliff's remains in the suit only as an intervenor.
After trial on the merits, the trial court assessed the fault for the accident as follows: 0% to Franklin, 20% to Hicks, 40% to Oilfield, and 40% to Cliff's. In oral reasons for judgment the trial court found that Franklin's total damages amounted to $403,268 exclusive of legal interest. The damages found by the court consisted of $343,268 in economic loss (representing loss of wages or income), $10,000 in future medical expenses and $50,000 in general damages. No mention was made of the amount of medical expenses actually incurred. The court also held that Franklin's total award should be reduced by the percentage of Cliff's negligence, 40%. The third party demands were rejected.
Cliff's was granted full recovery against Oilfield and Hicks for the sum of $37,429.16 paid in compensation benefits.
In the formal judgment signed by the court, plaintiff's total damages were fixed at $424,045.16 which reflects some stipulated medical expenses. However, the award itself was stated to be $254,427.10, a reduction of $169,618.06 (40% of $424,045.16). Cliff's demand as intervenor for recovery of compensation paid was recognized with legal interest from date of judicial demand until paid. The formal judgment purports to grant third party demands of Hicks and Oilfield but only to the extent of providing that Oilfield and Hicks should pay only 40% and 20% of the judgment respectively, their insurers being liable to their limits of coverage.
The judgment does not provide that Cliff's recovery should be paid by preference out of the award made to Franklin. Costs were assessed on the basis of two-thirds to Oilfield and its insurer and one-third to Hicks and its insurer.
All parties appealed. We affirm in part and amend in part and render the appropriate judgment.

FACTS
Alvin Franklin was employed by Cliff's as a motorman, which involved various tasks around Cliff's drilling rigs. On May 21, 1982, Franklin and the rest of Cliff's crew, headed by driller Mike Thomas, were assigned to reassemble Cliff's Rig No. 26, which had been moved to the vicinity of Kaplan, Louisiana. Oilfield had been hired to haul the pieces of the derrick to the site, and Oilfield had contracted with Hicks for the two cranes necessary to place the structure on the rig. When Franklin had finished his work on the structure, Mike Thomas told him to pick up tools that had been scattered under the derrick. Thomas said he was going to see how close to completion the rest of the crew was. Shortly thereafter the derrick was lifted. Testimony was confused as to who authorized the lifting, who was responsible for clearing the site, and whether there were any warnings. Apparently one of the cranes was improperly boomed, which caused the derrick to sway as it rose from the ground. Franklin was pinned between the derrick and a catwalk. When the structure swung away and was lowered, Franklin was placed on a stretcher and was driven to a hospital. He was hospitalized for fifty-four days with multiple pelvic fractures, fractures of the hip joints, a fracture of the sacrum, and tears of the bladder and rectum, which required surgery. Subsequently, traumatic arthritis set into the area of the fractures, which continues to cause him pain. Although he used crutches and a walking cane for sometime, Franklin was ultimately able to walk with a limp but without assistance. As of the trial date, he had not been employed since the accident.
Several issues have been raised on appeal and will be discussed as follows: (1) Hicks' fault. (2) The nature of injuries and quantum. (3) The significance of Cliff's negligence. (4) Cliff's claim for reimbursement.

HICKS' FAULT
Oilfield has contested the assessment of fault as it related to Hicks, claiming *552 Hicks was more than 20% negligent. This issue will be reviewed under the wellestablished standard that the findings of fact of a trial court are not to be disturbed unless clearly erroneous.
Testimony adduced at trial supports the conclusion that either the truck pusher or the individual who ultimately served as flagman was responsible for double-checking the crane position just prior to lifting the derrick. The alignment of the boom may have been Hicks' job initially, but the court did not err in deciding that, not only did someone else have a duty to correct the problem, but also the accident was caused in part by factors not relating to the offcentered crane. Therefore, we affirm this finding of fact.

THE NATURE OF INJURIES AND QUANTUM
The trial judge awarded Franklin $403,268, the sum of $343,268 in economic loss, $10,000 in future medical expenses, and $50,000 general damages for "pain and suffering and anguish, past and present, including loss of recreational activities." None of the parties dispute the quantum awarded for future medical expenses or for loss of earnings. However, Franklin complains that the general damages are inadequate, and he urges that they should be increased to no less than $200,000. The defendants argue that the award is adequate. Additionally, we note that the trial judge failed to award Franklin damages for his past medical expenses. We find it necessary to modify the judgment of the trial court to rectify what we perceive as errors in the damage award.
In his petition, Franklin asked for damages in the unitemized amounts of $1.5 million dollars each for "pain, suffering, mental anguish, etc." and for "loss of income, etc." The first category evidently covers general damages; the latter represents special damages. At trial the parties stipulated that Cliff's had paid $20,776.16 in medical damages as of September 18, 1983. Plaintiff is entitled to recover this amount although Cliff's must be reimbursed this same amount out of Franklin's recovery.
The stipulated medical expenses of $20,776.16 paid by Cliff's should be awarded to plaintiff as special damages. These medical expenses, as well as $16,653 paid to plaintiff in compensation, will be reimbursed to Cliff's out of plaintiff's award, and the judgment should provide that the reimbursement be paid by way of preference and priority. LSA-R.S. 23:1103. See Louisiana Civil Law Treatise, Vol. 14, Workers' Compensation, by Malone and Johnson, Sec. 370 at pages 187 and 188; see also Billeaud v. United States Fidelity and Guar. Co., 349 So.2d 1379 (La.App.3d Cir.1977).
The trial court did not break down its award for economic loss of $343,268, but we note that plaintiff's economic expert testified that past loss of income as of the end of November, 1983 would amount to $30,115, and future loss of income would amount to $313,153, or to a total loss of income, past and future, of $343,268. Inasmuch as the award for past loss of income was calculated as of the end of November, 1983, we are of the opinion that the plaintiff is entitled to an additional amount of past lost wages to carry through to the end of the trial, February 10, 1984. From the economic expert's testimony we conclude that plaintiff would have had a weekly income of $772.20 for approximately five weeks, a total of $3,861. Therefore, the award for economic loss should be amended to the sum of $347,129.
Next, we examine the $50,000 general damage award, which plaintiff claims is inadequate. Under Reck v. Stevens, 373 So.2d 498 (La.1979), upon appellate review we may not disturb an award of general damages made at the trial court level without a finding of clear abuse of discretion and then only after abuse is shown through an articulated analysis and for articulated reasons. If a clear abuse is found, an appellate court may consider awards made in the past but only in the mass of them and not on the basis of selected past *553 awards. This refinement of the rule stems from the holding of Coco v. Winston, 341 So.2d 332 (La.1977) construing the "much discretion" given to the judge or jury by LSA-C.C. art. 1934(3). Under the holding of the latter case, after finding abuse of discretion, an appellate court is limited in raising awards only to the lowest point which is reasonably within the discretion of the trial court, or conversely to reducing an award to the highest point within reasonable discretion of the trial court.
As a point of departure we consider the trial court's findings as to the injuries sustained by Franklin, and the residual condition and disabilities which have resulted. In oral reasons for judgment the trial court stated its findings as follows:
"The Court finds that the plaintiff, Mr. Franklin, was involved in a severe crushing oilfield accident. The abdominal and pelvic areas were crushed. He suffered three tears or ruptures to his bladder and a tear on his rectum. He had multiple fractures of the pelvis and the hip joint. The pelvic fractures were displaced and malaligned. He also suffered a fracture of the sacrum or tailbone. He underwent surgery in Kaplan where he was hospitalized for five (5) days, then transferred to a hospital in Jonesville, where he remained hospitalized for forty-nine (49) days. The Court finds that he was permanently disabled from doing the type of work that he was doing before the accident, that there have been and will be additional arthritic changes in this man throughout his life. The Court finds that it is more probable than not, and hence proved to the Court's satisfaction, that at some point in the future, he will have to undergo very serious surgeryeither a hip ball replacement or even a fusing of that joint. The Court feels that he cannot be employed in his present condition within reasonable certainty at anything exceeding the minimum wage, and that even such employment with his history is going to be difficult to obtain.
"Based upon the testimony of Dr. Hohenstein, the economist, the Court feels that he has suffered an economic loss of Three Hundred and Forty-Three Thousand Two Hundred and Sixty-Eight Dollars ($343,268.00).
"The Court finds that based upon the testimony of Dr. Gunderson, he will probably have future medical expenses, and an award is hereby made to him in the amount of Ten Thousand Dollars ($10,000.00).
"Based upon all of the testimony, the Court finds that he has suffered pain and suffering and anguish, past and present, including loss of recreational activities, and all such losses, and will award him a sum of Fifty Thousand Dollars ($50,000.00).
"Total award: Four Hundred and Three Thousand Two Hundred and Sixty-Eight Dollars ($403,268.00)."
After a careful consideration of the medical testimony we conclude that the award of general damages in the amount of $50,000 is inadequate and the trial court abused its discretion in not making a higher award. While the trial court's summary quoted above is correct, it evidently failed to properly weigh the consequences of the arthritic changes which owe their origin to the pelvic fractures sustained. In passing we note conflict in the medical testimony. The orthopedic surgeon who cared for plaintiff from a time beginning five days after the accident until thirteen months after the accident felt that plaintiff did not have arthritis as a result of the accident. Dr. Clark C. Gunderson, who examined plaintiff a few months later (although only one time and only for evaluation), was of the opinion that plaintiff had traumatic arthritis as a result of his injuries which would grow progressively worse. Other expert medical testimony supported a finding of arthritis developing about the fracture sites and fracture lines.
The following points were established by Dr. Gunderson's testimony:
1. Degenerative changes (arthritis) are occurring in plaintiff's right hip, the *554 most critical of which, perhaps, involves the right hip socket (acetabulum).
2. The arthritis will progress, and will make plaintiff a very likely candidate for some type of hip surgery in the future.
3. Plaintiff suffers pain as a result of the arthritis and will suffer more pain as the arthritis progresses.
4. Because of plaintiff's right hip problem, he has sustained a 40% impairment of the lower right extremity.
5. Plaintiff's condition is consistent with plaintiff's contention that he cannot walk for any great distance or carry heavy objects.
6. Plaintiff's condition is consistent with plaintiff's contention that he cannot sit straight in a chair for a great period of time without experiencing pain.
7. Plaintiff's condition is likely to produce pain on a daily basis.
8. The only thing which can be done to alleviate plaintiff's pain is prescribed medication, Darvon or codeine.
9. The growth or progress of arthritis cannot be prevented by medication.
The above points must be considered against the fact that plaintiff was twenty-seven years old when Dr. Gunderson examined plaintiff, and he has many years of life expectancy. Dr. Gunderson explained that the surgery which plaintiff may expect to have to undergo down the road would consist of either hip fusion or the implant of an artificial hip joint of plastic with fixation of a metal ball in the thigh bone, the femur. These procedures are usually reserved for older people with a lesser number of years of life expectancy, because either a fusion or artificial hip may not last over a long number of years. Moreover, a fusion or insertion of an artificial hip joint may not be successful even in the short run. While the trial court's judgment made an award for future medical expenses, plaintiff's recovery from a fusion would, in addition to ten days' hospitalization, require three months in a cast and six months for recovery over-all. A similar history would follow surgery for an artificial hip joint. Neither of these procedures would permit plaintiff to do heavy manual labor.
In summary, in articulating the reasons for abuse of discretion, we find that proper evaluation was not given to the pain plaintiff will suffer over a long period of time, the limitations in life style and ability to work (as distinguished from pure economic loss), and the uncertainty of plaintiff's future.
We now proceed to consider the lower quantum limits appropriate in this case reasonably within the trial court's discretion.
In a recent case from this Court we refused to increase an award of $100,000 for a compound skull fracture sustained by a three-year-old child which resulted in some brain damage, physical disability, and the necessity of medication to prevent seizures. Richoux v. Hebert, 449 So.2d 491 (La.App.3d Cir.1983), writ denied, 450 So.2d 368 (La.1984).
In a more recent case, Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3d Cir.1985.), we increased an award of $225,000 to $400,000. In this case the claimant sustained a broken neck and other serious injuries which resulted in serious consequences including a constant risk of paralysis and reactive depression.
The Court of Appeal in another circuit significantly increased an award of $98,908 in Jones v. Sewage & Water Bd. of New Orleans, 430 So.2d 1063 (La.App. 4th Cir. 1983). The award was inclusive of $18,808 in medical expense, $5,800 in future medical expenses, and $18,651 in economic loss and diminished earning capacity. The claimant ruptured two cervical discs and a lumbar disc, underwent two operations and would be handicapped in performance of duties as a keypunch operator or typist. The award was increased by the appellate court to $43,359 for medical expenses past and future and wages lost at the time of trial, $6,641 in wages she will lose prior to the time she might attempt to work, and $150,000 for pain and suffering, loss of future wages and diminished earning capacity.
*555 For our consideration plaintiff has cited the following cases:
In Parfait v. State Department of Highways, 334 So.2d 549 (La.App. 1st Cir.1976), the appellate court considered a trial court award of $615,000 which was not broken down between general and special damages. The Court of Appeal stated that $300,000 in general damages would be reasonable. The amount covered plaintiff's pain and suffering where his injuries consisted of a fractured left hip, fracture of both sides of the pelvis and a lacerated spleen, and where the injuries caused loss of certain physical functions.
This Court of Appeal reduced a jury award for general damages to a 77-year-old woman from $218,000 to $150,000 as the highest possible award. Lanclos v. Hartford Acc. & Indemn. Co., 366 So.2d 621 (La.App.3d Cir.1978). There the injured party suffered a badly broken leg with skin pulled loose. She required lengthy hospitalization but experienced a good recovery considering her age. Her doctors were of the opinion that a 30% disability, although significant, did not have a great impact on her activities which we assume were those appropriate for a person aged 77.
A Court of Appeal affirmed an award of $125,000 it characterized as "somewhat low" in Stewart v. Schmieder, 376 So.2d 1046 (La.App. 1st Cir.1979). The plaintiff in that case was a 45-year-old carpenter whose painful and extensive leg injuries resulted in a 15% loss of use of his left leg, a 65% loss of the use of his right leg, and a permanent disability to engage in his trade.
In Bunkie Funeral Home, Inc. v. McNutt, 414 So.2d 1263 (La.App.3rd Cir. 1982) the trial court award of $140,000 was reduced on appeal to $80,000.
The case of Merrell v. State of Louisiana, Through the Department of Transportation & Development, 415 So.2d 660 (La.App.3d Cir.1982) affirmed a $200,000 award for pain, suffering and disability for a crushing right foot injury and a more serious injury to the left femur and left foot resulting in a 25% disability.
The sum of $210,000 was affirmed on appeal in Dugas v. Jimenez, 413 So.2d 531 (La.App. 4th Cir.1982), writ denied, 414 So.2d 1253 (La.1982) for a claimant in whose right knee a pin had been inserted in order that plaintiff could be placed in traction and who subsequently developed arthritis of the knee and calcific bursitis of the hip.
We affirmed a $200,000 general damage award in Pawlak v. Brown, 430 So.2d 1346 (La.App.3d Cir.1983) for a 16-year-old boy who suffered a fracture of the left hip. He was in the healing process for two years and had a 3/8-inch shortening of the left leg and atrophy of the left thigh and left calf. His disability was between 5% and 10% but he would suffer a 50% impairment of the extremity if the cystic area collapsed, and there was a 70% chance of further surgery which would entail replacement of the hip.
In London v. Bell, 422 So.2d 260 (La. App. 4th Cir.1982), $100,000 was affirmed on appeal where the plaintiff sustained a 20% disability about her left knee and whose job required that she remain standing for extended periods of time and who suffered excruciating pain.
A $200,000 award for general damages was affirmed in DiMattia v. Gulf South Beverage, Inc., 459 So.2d 598 (La.App. 5th Cir.1984), writ denied 462 So.2d 209 (La. 1985). Plaintiff underwent a lumbar laminectomy with a fusion and a week later he underwent a cervical fusion.
Finally, plaintiff calls our attention to Efferson v. State, Through Dept. of T. & Dev., 463 So.2d 1342 (La.App. 1st Cir.1984) where general damages of $520,000 and $260,000 were awarded.
On behalf of Oilfield we are urged to consider the testimony of Dr. Perdue to the effect that plaintiff made an excellent recovery without significant disability. As noted above the trial court found otherwise and the testimony of other doctors supports his findings. Oilfield cites three cases for our consideration in urging that the $50,000 general damage award is adequate. The cases are Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 *556 (La.App.3d Cir.1982), writ denied, 412 So.2d 99 (La.1982); Chesson v. American Hardware Mut. Ins. Co., 412 So.2d 186 (La. App.3d Cir.1982); and Cullivan v. State Farm Mut. Auto. Ins. Co., 428 So.2d 1231 (La.App.3d Cir.), writ denied, 433 So.2d 180 (La.1983), all from this circuit.
In Head a majority of a five-judge panel reversed a finding of no liability by the trial court and assessed plaintiff's general damages at $50,000. Plaintiff was 71 years old and had come to live with her daughter. In a fall at the defendant hospital plaintiff sustained a fracture of her left hip. An open reduction of the hip was performed. A second operation was required to insert a metal prosthesis to replace the ball in her hip joint. As a result of the injury she became almost totally dependent on her daughter for care after having been very active prior to the accident.
In Chesson we found no abuse of discretion with reference to an award of damages of $60,000 to a plaintiff for pain and suffering, disability, and loss of earnings for a hip fracture requiring surgery. Plaintiff complained of pain and inability to do heavy lifting and squatting required of a paint and body man. He might require further surgery to remove a hinge-plate implant. The disability suffered was 15% to his right hand and 10% to the hip.
In Cullivan a panel of this Court refused to lower or raise awards made below, including a general damage award of $75,000, to a woman who sustained a fracture of the posterior wall of an acetabulum, the socket part of a hip joint. She also sustained fractures of the left humerus, fractures of the 7th and 8th ribs and a bruised leg. She was having difficulty with her left knee as a result of an infection which was draining at the point of her leg where a pin was inserted. She suffered various pains including osteoarthritis pain associated with the trauma she endured.
Based on a consideration of the mass of cases described above, we conclude that $200,000 was the least amount of general damages which the trial court, in its "much discretion," might have reasonably awarded to plaintiff. The award will be amended accordingly to increase the general damage award.
Our modifications result in the following calculation:

Special damages
 Past medical expenses ......... $20,776.16
 Future medical expenses ....... 10,000.00
 Past economic loss ............ 33,976.00
 Future economic loss .......... 313,153.00
 General damages ............... 200,000.00
 ___________
 $577,905.16

THE SIGNIFICANCE OF CLIFF'S NEGLIGENCE
The Workers' Compensation system is characterized as a compromise between employer and employee. The employer gives up a determination that he was not at fault in a job-related accident. The injured employee sacrifices a damage award, receiving only his wages and expenses. Under LSA-R.S. 23:1032, when an injured employee is entitled to compensation benefits, that recovery "shall be exclusive of all other rights and remedies of such employee." Thus, as between employer and employee, fault will not be an issue.
The present suit is a tort action by the employee against third parties. The trial court approached the case as it would any other tort suit. It applied the concept of comparative negligence, and found the employer 40% negligent. It then reduced the injured employee's recovery by that percentage. In so doing, the trial court not only created an inroad into the workers' compensation scheme; it also penalized the very party which both compensation and tort damages are designed to benefit: the injured employee. Oilfield justifies this result by stating that "an employee who has given up his right to sue his employer in tort should be content with his recovery of the compensation benefits which he agreed to accept in lieu of tort damages, so that his recovery must be reduced by the percentage of negligence attributable to the *557 employer whom the plaintiff has agreed not to sue." But this is not the bargain the employee made in accepting compensation. The statute expressly provides that the employee has an action against liable third parties in addition to the compensation claim. See LSA-R.S. 23:1101.
An indispensable element of the worker's compensation "bargain" is the employer's freedom from tort liability for injury to his employee. This principle can be fully effectuated only if the employer is given absolute immunity at all levels. Thus, the Supreme Court affirmed the principal that there can be no contribution or indemnity between a third party tortfeasor and an employer. LeJeune v. Highlands Insurance Company, 287 So.2d 531 (La.App.3d Cir.1973), writ refused, 290 So.2d 903 (La. 1974).
We are of the opinion that the trial judge erred in considering Cliff's negligence. Because it paid worker's compensation benefits to Franklin, Cliff's is immune from all tort liability. We believe that allowing the apportionment of fault to include the negligence of an employer (by way of reduction of the plaintiff's recovery) erodes the system. Therefore, the judge should have held the two defendants before the court liable for the full amount of plaintiff's damages. Cliff's negligence, if in fact, there was any, is immaterial under the circumstances.
The trial judge found Oilfield 40% negligent, and Hicks 20%. Apparently he felt that Oilfield was twice as negligent as Hicks. As their negligence was the only fault that could be considered, the plaintiff was entitled to the full amount of his damages, two-thirds owed by Oilfield, and one-third owed by Hicks.

CLIFF'S CLAIM FOR REIMBURSEMENT
The above rationale leads us to the conclusion that the trial court correctly awarded Cliff's full reimbursement for the compensation benefits it paid Franklin. The recovery could not be reduced by Cliff's fault. LSA-R.S. 23:1101 allows the employer a right to recovery of benefits it paid, without qualification. We adhere to the Supreme Court's opinion on rehearing in Vidrine v. Michigan Millers Mutual Insurance Company, 263 La. 300, 268 So.2d 233 (1972), which followed a strict statutory construction of Section 1101, and refused to reduce an employer's recovery by the amount of its negligence. We note also that the legislature recently has amended Section 1101 to provide that "where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage." La. Acts 1985, No. 931. However, the legislature has not acted to overrule Vidrine, and allow a reduction based on the employer's negligence.
To base a solution solely on fairness, as the defendants urge us to do, would require us to fashion a law which does not now exist. The inequities of which these defendants complain have existed for years. The only reason that the complaints have surfaced now is that only now are triers of facts required to make a determination of proportionate fault. Before this determination was required through legislative adoption of the comparative negligence rule, no one ever knew the amount of fault attributable to each co-tortfeasor. The rule of solidarity applied to such cases, but inasmuch as an employer who otherwise would be liable for negligence was in fact immune, the non-employer negligent parties were required to pay for the whole loss. There was no right of contribution. Louisiana Civil Law Treatise, Vol. 14, Workers' Compensation, by Malone and Johnson, Sec. 374, pp. 218-224.
We might well agree that inequities exist. Nevertheless, any adjustment in the apportionment of the loss is a policy matter, just as the change from contributory negligence to comparative negligence was a policy matter. Therefore, it is primarily a matter for legislative consideration. It may be that our Supreme Court, by reconsidering Vidrine-type concepts, may fashion *558 a more satisfactory rule. However, the Supreme Court's power and role is broader than ours. We do not deem the fashioning of rules of law such as defendants suggest to be within our role.

CONCLUSION
For the reasons given above, we affirm the judgment of the trial court in part; we amend it in part in order that the judgment be consistent with the views expressed herein. To that end we recast the judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Alvin Franklin, and against the defendants, Oilfield Heavy Haulers, Inc. and its insurer, Paxton National Insurance Company, subject to any applicable policy limits; Hicks Construction Company, Inc. and its insurer, Bellefonte Underwriters Insurance Company, subject to any applicable policy limits, in solido, in the true and legal sum of $577,905.16, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings, less the amount awarded in the following paragraph to intervenor, Cliff's Drilling Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Cliff's Drilling Company, intervenor herein, and against the defendants mentioned in the preceding paragraph, in solido, in the full sum of the amount which Cliff's Drilling Company has actually paid or will actually pay prior to the date of the satisfaction of this judgment, to or on behalf of Alvin Franklin as weekly worker's compensation benefits and medical expenses (which sum, as of the date of the trial court's judgment was $37,429.16), plus judicial interest on the amount of each payment of benefits which has been or will be made by defendants from the date of each payment until payment of the amounts awarded in this judgment, the sum to be paid to this drilling company to be paid by preference and priority out of the award made herein to plaintiff, Alvin Franklin.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that such portion of the amount of the judgment herein in favor of Alvin Franklin which exceeds the amount which Cliff's Drilling Company is entitled to be paid shall be credited against any obligation which Cliff's Drilling Company may owe Alvin Franklin for future worker's compensation benefits, medical expenses, or otherwise accruing after the date of the satisfaction of this judgment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, subject to the policy limits mentioned above, the liability of Oilfield Heavy Haulers, Inc. and its insurer, and Hicks Construction Company, Inc. and its insurer, as between themselves, and as provided by law, shall be fixed at 66 2/3% for Oilfield Heavy Haulers, Inc. and its insurer, and 33 1/3% for Hicks Construction Company, Inc. and its insurer of the awards made in this judgment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants, Oilfield Heavy Haulers, Inc. and Paxton National Insurance Company, pay two-thirds of all costs in this matter, including the costs on appeal, and that Hicks Construction Company, Inc. and Bellefonte Underwriters Insurance Company pay the remaining one-third of the costs of these proceedings, both in the trial court and on appeal.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expert witness fees assessed by the trial court be and they are fixed at the amount set forth in the trial court's judgment.
AFFIRMED IN PART; AMENDED AND AFFIRMED AS AMENDED.
KNOLL, J., concurs in part, dissents in part and assigns written reasons.
KNOLL, Judge, concurring in part and dissenting in part.
I am in agreement with the majority's opinion in all respects except the amount of *559 general damages awarded to plaintiff. I concur in the majority's decision to raise the general damage award, however, I conclude that $200,000 is far below the least amount of general damages which the trial court might have reasonably awarded.
Damage awards to a particular plaintiff should be determined by the facts and circumstances peculiar to the case under consideration. Reck v. Stevens, 373 So.2d 498 (La.1979). There was substantial testimony concerning the severe pain and suffering Alvin Franklin endured during his 54 days of hospitalization and that he suffered substantial mental pain and anguish which, because of the necessity of future surgery, the ever increasing disability caused by the progressive continuing onset of arthritis, the severe and chronic pain and his inability to secure employment, shall continue for the remainder of his many years of life expectancy. Franklin was 27 years of age at the time of the accident. Furthermore, the accident has left Franklin crippled, unable to enjoy a night of uninterrupted sleep because of the decreased size of his bladder, and unable to ever particpate in recreational activities. For these reasons I consider that the least amount which the trial court could have reasonably awarded is $400,000. In Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App.3rd Cir.1985), this court awarded $400,000 for general damages to a plaintiff 59 years of age with a much shorter life expectancy than the plaintiff in the case sub judice.
Therefore, I concur in the results reached by the majority but respectfully dissent from the majority's inadequate assessment of general damages.