428 So.2d 1231 (1983)
Marshall CULLIVAN, Jr., et al., Plaintiffs-Appellees-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellants-Appellees.
No. 82-546.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Writs Denied May 23, 1983.
*1233 Morrow & Morrow, James Ryan, Opelousas, Robert McHale, McHale, Bufkin & Dees, Lake Charles, for plaintiffs-appellees-appellants.
William J. Doran, Jr., Baton Rouge, for defendants-appellants-appellees.
J. William Pucheu, Ville Platte, for third party plaintiff-appellee.
McBride & Foret, Glynn Rozas, Lafayette, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
This tort suit was filed by Marshall Cullivan, Jr., Mable Cullivan, Alvin Cullivan, and Alton Cullivan on June 18, 1980, against (1) State Farm Mutual Automobile Insurance Company (State Farm), insurer of Martha Veillon; (2) Aetna Casualty & Surety Company; (3) Government Employees Insurance Company; (4) the Estate of Martha Veillon; and (5) the Louisiana Department of Transportation and Development (DOTD), for injuries they received as a result of a tragic automobile accident which occurred on January 26, 1980.[1] The plaintiffs claimed that the accident and the resulting injuries were caused by the negligence of Martha Veillon and the DOTD.
The DOTD subsequently filed a third party petition on September 17, 1980, against State Farm and the Estate of Martha Veillon seeking indemnity or contribution for any damages for which it might be held liable to the plaintiffs. On September 29, 1980, the Estate of Martha Veillon also filed a third party demand against the DOTD seeking indemnity.
On November 23, 1981, the Estate of Martha Veillon filed an amended third party *1234 demand against the DOTD, interposing Joy Veillon Morein and Burkeman Veillon, the apparent heirs of Martha Veillon, as parties to the suit. These new claimants sought to recover damages for the death of their mother in the January 26, 1980, automobile accident.
The DOTD thereafter filed exceptions of no cause of action and prescription to the amended third party petition of the Estate of Martha Veillon. It also filed a motion to strike the claim for damages from the estate's amended third party action. However, the trial judge subsequently dismissed the exceptions and the motion to strike.
State Farm filed a concursus petition in order to discharge itself from further liability in the proceedings. It deposited into the registry of the trial court the sum of $22,726.03, representing the limits of its policy covering Martha Veillon, plus judicial interest, to be distributed pursuant to the concursus provisions of Louisiana Code of Civil Procedure (article 4651, et seq.).
The trial court rendered judgment in favor of the four named plaintiffs and against the DOTD, awarding Marshall Cullivan, Jr. $500,000.00 with legal interest; Mable Cullivan $75,000.00 with legal interest; Alvin Cullivan $75,000.00 with legal interest; and Alton Cullivan $15,000.00 with legal interest thereon. The DOTD was also ordered to pay all medical and hospital expenses incurred by the plaintiffs as a result of the accident up to November 25, 1981, the date of the trial.
The trial court further awarded the Estate of Martha Veillon, through Joy Veillon Morein and Burkeman Veillon, the sum of $64,366.90 plus interest, against the DOTD. All demands against the Estate of Martha Veillon were denied since the Court determined that Martha Veillon was not guilty of any negligence in causing the accident.
The four Cullivan plaintiffs were also granted judgment on the concursus of State Farm, each receiving a proportionate amount of the $22,726.03 deposited by the insurance company into the court's registry. DOTD was finally assessed with all costs and expert fees.
The DOTD suspensively appealed from the above judgment. The plaintiffs answered the appeal, seeking to have the judgment modified to increase the amount of damages awarded to them.
The facts of this case are as follows: On the morning of January 26, 1980, Marshall Cullivan, Jr. was driving his 1972 Chevrolet automobile in a northerly direction along Louisiana Highway 29 near the point that Louisiana Highway 29 intersects La. Hwy. 104 in Evangeline Parish, Louisiana. Marshall Cullivan's wife, Mable, was seated in the front seat next to him, and his two sons, Alvin and Alton Cullivan, were seated in the back of the vehicle. At the same time, an automobile being operated by Mrs. Martha Veillon was proceeding in a southerly direction along La. Hwy. 29. Following Mrs. Veillon's vehicle was an automobile owned and operated by Mr. Winston Fontenot.
Winston Fontenot testified that the Veillon vehicle seemed to be traveling at a speed of about 50 to 55 miles per hour at a distance of one or two city blocks ahead of him when the two right wheels of the car suddenly went off onto the shoulder of the road. The vehicle almost immediately re-entered the road from the shoulder. However, Mr. Fontenot stated that shortly thereafter, just as the Veillon car was about to enter a curve, the two right wheels left the road and veered onto the shoulder once again. When Martha Veillon attempted to re-enter the roadway this time, her car hurtled across the southbound lane of La. Hwy. 29 and collided with the Cullivan vehicle head-on in the northbound lane. The Cullivan automobile had been proceeding entirely in the northbound lane and within the speed limit at the time the crash occurred. As a result of the accident, Martha Veillon either died on impact or shortly thereafter. The four persons riding in the Cullivan vehicle were all seriously injured as well.
The DOTD makes five specifications of error in its brief, each of which will be dealt with separately in this opinion:
*1235 (1) The trial court erred in allowing the prosecution of a cause of action for the wrongful death of Mrs. Veillon, which was first attempted to be asserted against the DOTD on the first day of the trial by amending a previous third party demand.
(2) The trial court erred in its finding that the DOTD was negligent or that there was a defective condition on the shoulder of the roadway which caused or contributed to this accident. The court further erred in failing to find that the sole, proximate cause of this accident and any resulting damages was the negligence of Martha Veillon.
(3) The court erred in admitting photographs that were taken at a scene different from the scene of the accident and allowing testimony from lay witnesses concerning the similarity of the condition depicted in the photographs and the condition at the scene on the date of the accident.
(4) The court erred in refusing to allow credit as against the judgment for the amounts paid by State Farm Mutual Automobile Insurance Company, the insurer of the Veillon vehicle, under concursus proceedings filed in the record.
(5) The court erred in awarding an excessive amount of damages to the plaintiffs.

ERROR NO. 1
The Department of Transportation and Development argues in its brief that the trial judge erred in overruling its plea of prescription to the claims of the Estate of Martha Veillon, Joy B. Morein, and Burkeman Veillon for damages for the death of Martha Veillon. These claims were propounded via a petition amending the third party action originally filed by the Estate of Martha Veillon against the Department of Transportation and Development on September 29, 1980, seeking indemnity or contribution for any amounts that it might be held liable for in the principal action. The amending petition was filed on November 23,1981, nearly fourteen months after the third party action had been originally filed, and almost twenty-two months after the accident had occurred.
Actions for damages resulting from offenses or quasi offenses are prescribed by one year. La.C.C. Article 3536. Clearly the claim made by Joy Morein and Burkeman Veillon came well over a year after the accident involved in this suit.
However, they assert that the third party petition filed by the estate on September 29,1980, interrupted prescription as to their subsequent claims for damages. In support of this contention, they cite the opinion written by Justice Tate in Allstate Insurance Company v. Theriot, 376 So.2d 950 (La.1979). In that case, the plaintiff, Allstate, alleging that it was obligated to Moore for workmen's compensation benefits due to injuries Moore had sustained, initially sued Theriot in tort for the injuries sustained by Moore. Subsequently, Moore intervened in the suit to recover damages for his personal injuries and medical expenses, based upon the same accident, the same negligence of Theriot, and the same injuries that Allstate had initially sued upon. However, while Allstate's suit had been filed within the prescriptive year after the accident, Moore's suit was not filed until long after the prescriptive year had lapsed. Allstate's claim was subsequently dismissed on an exception of no right or cause of action, yet Moore's claim was allowed on the basis that Allstate's timely suit had interrupted prescription as to Moore's own claim.
In Justice Tate's opinion, he relies heavily on a previous decision by the Supreme Court in National Surety Corporation v. Standard Accident Insurance Company, 247 La. 905, 175 So.2d 263 (La.1965). That case centered on an interpretation of La.R.S. 9:5801, which provides:
"All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants, including minors or interdicts, by the commencement of a civil action in a court of competent jurisdiction and in the proper venue. When the pleading presenting the judicial demand is filed in an incompetent court, or in an improper venue, prescription is interrupted *1236 as to the defendant served by the service of process."[[2]]
The Court in that case subsequently held that:
"LSA-R.S. 9:5801, supra, recites that all prescriptions affecting the cause of action sued upon are interrupted as to all defendants by the commencement of a civil action in a court of competent jurisdiction. Certainly the claim of Tyson affected the one cause of action alleged by plaintiff; it follows that any prescription applying to the filing of an intervention by Tyson was interrupted by the timely filing of suit by the employer's insurer, especially, as stated supra, when the intervention was filed before answer. We conclude that herein there can be no separate prescription which applies to rights of action as opposed to cause of action."
Based upon this interpretation of La.R.S. 9:5801, Justice Tate developed a test to determine whether or not prescription is interrupted as to a subsequent claimant seeking to enter a lawsuit by amended petition or intervention.
"It is true that, if (as in this case) the subsequent claimant is a different person than the original plaintiff, then to interrupt prescription the first suit must not only be based upon the same factual occurrence as is the subsequent claim by amended petition or intervention; the subsequent claimant must also be closely connected in relationship and identity of interest with the original plaintiff."
In Brown & Root v. Missouri Pacific Railroad Co., 381 So.2d 1255 (La.App. 4th Cir. 1980), Judge Redmann provided an excellent discussion of La.R.S. 9:5801 as interpreted in Allstate and National Surety Corporation:

"Allstate Ins. Co. v. Theriot, La.1979, 376 So.2d 950, traces and explains the correct application of R.S. 9:5801. Beginning with National Surety Corp. v. Standard Acc. Ins. Co., 1965, 247 La. 905, 175 So.2d 263, Theriot notes that in every case the late-filer sued upon a claim already presented, in part, by the original petition. In National Surety, for example, the workmen's compensation insurer's demand for reimbursement from the third-party tortfeasor presented every element of the late-filing injured employee's cause of action under C.C. 2315: fault of the tortfeasor, causation, and damage to the employee. The employee's late-filed petition did not allege a different cause of action, with an essential element foreign to the cause of action stated by the insurer's petition: National Surety is comparable to the case of a tort victim who timely demands specified damages and then, over a year after the accident, amends to seek greater damages. Our case, on the other hand, is comparable not to the late filing by the employee in National Surety but to a late filing, say, by a stranger (not paid benefits by the insurer) who happened to be hurt by the same tort."
We are of the opinion that the claims filed by Joy Morein and Burkeman Veillon had indeed prescribed, by application of the correct interpretation of La.R.S. 9:5801 as described in the Brown & Root case. The cause of action sued upon by these parties contained elements which were not contained in the estate's original third party action against the Department of Transportation and Development. The original action by the estate merely sought indemnity or contribution from the Department of Transportation and Development for any amounts for which the estate might be held liable to the plaintiffs. The intervention by Joy Morein and Burkeman Veillon, however, was based on an entirely different cause of action. These parties were seeking damages for their own personal losses, rather than seeking indemnity for their potential liability. Since this required them to set out specific claims of personal damages rather than affirmative defenses, there was no "identity of interest" between their claims and that of the estate in its original petition.
*1237 The fact that the intervention filed by the heirs was couched in the form of an amendment to the original third party petition does not save the claims from prescription. While La.C.C.P. Article 1153 allows an amendment to relate back to the date of filing of the original pleading where "... the action or defense asserted in the amending petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...", there still must be some factual connexity between the original and amended assertions, together with some identity of interest between the original and supplemental party before the claim will be allowed. Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980). We find no identity of interest in the claims filed in the original and amending petitions. These were simply two independent sets of claims which happened to arise out of the same sets of facts. We thus conclude that the trial judge erred in its overruling of the Department of Transportation and Development's exception of prescription to the claims of Joy Morein and Burkeman Veillon asserted in the amending petition.
Insofar as the claim of the Estate of Martha Veillon for damages for the death of Martha Veillon is concerned, it had no right to bring forth such claim at any time whatsoever. The right of action created by La.C.C. Article 2315 may be extended only to the beneficiaries named in the statute and the classes of beneficiaries must be strictly construed. Roche v. Big Moose Oil Field Truck Service, 381 So.2d 396 (La. 1980). Article 2315 does not list successions or succession representatives as beneficiaries, thus the Estate of Martha Veillon has no right of action. Since an appellate court may of its own motion notice the failure of a party to disclose a right of action, we hereby take notice thereof and accordingly dismiss the claim of the Estate of Martha Veillon for recovery of damages for the death of Martha Veillon. La.C.C.P. Article 927.

ERROR NO. 2
In the trial judge's reasons for judgment, he stated the following:
"The court makes the following findings of fact:
I. Martha Veillon was not guilty of any negligence in causing the accident;
II. DOTD was guilty of negligence: (1) in permitting dangerous conditions to exist, such as soft and slippery shoulders; (2) that DOTD had knowledge of the defective condition of the shoulders; (3) and that the travelling public was not warned of these conditions; (4) This negligence was the proximate cause of the accident; (5) Injuries suffered resulted from this negligence. (6) Furthermore, the court finds that the curve was defective in design, and construction, and not in compliance with the "Blue Book" standards of DOTD. (7) There was a drop-off of approximately five to six inches along the west shoulder of La. 29. (8) That La. 29 forms part of the Louisiana State Highway System; and that it is under the control, care and supervision of DOTD. (9) That Mrs. Veillon's maneuvers were not an intervening efficient cause breaking the chain of causation, and DOTD should have foreseen that harm could result to third parties due to its negligence, and the defective condition of the road."
The trial judge based his findings on the testimony of numerous persons who were witnesses at the accident site, as well as on the testimony of the experts in the areas of accident reconstruction and highway design. We have carefully reviewed the evidence presented in the record of this case, and we are unable to conclude that the trial judge's findings of fact were manifestly erroneous. We thereby adhere to them. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the Supreme Court's opinion in Rue v. State of Louisiana, Department of Highways, 372 So.2d 1197 (La.1979), the Court was confronted with the issue of whether or not a motorist who inadvertently drives off a highway onto its shoulder and then loses control upon striking a dangerous rut in the *1238 road is barred from recovery for her injuries due to her negligence in leaving the paved surface of the highway. The Court concluded in that case:
"A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder."
The Court thereby held that the plaintiff's conduct, even if deemed to be substandard, was not a bar to her recovery of damages since the Highway Department had negligently failed to maintain a safe shoulder.
However, the Supreme Court later narrowed the scope of Rue in their decision in Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980). Justice Blanche cited the language quoted, supra, from the Rue opinion, but thereafter declared:
"This language does not establish the highway shoulder as a `zone of recovery' for every straying motorist. Rather, it states the simple principle that the law will not automatically bar a person from recovery or charge him with liability visa-vis third parties where the law does not charge that person with actual or constructive knowledge of an avoidable danger. Thus, if a person is chargeable with knowledge of a shoulder defect that could cause serious injury and, nevertheless, disregards his own safety and the safety of others, the law considers his actions in leaving the main travel portion of the roadway to be a breach of his duty to himself and to the others who can reasonably be expected to be injured by his actions."
Ultimately, the Court in Sinitiere held that the plaintiff in this case should have known that something was wrong with the shoulder after leaving the surface of the roadway and that his action in attempting to re-enter the main portion of the highway under these circumstances constituted a breach of the duty of reasonable care owed himself and other motorists in the vicinity.
Just recently, the Supreme Court handed down its decision in LeBlanc v. State of Louisiana, 419 So.2d 853 (La.1982). In that case, the Court allowed the plaintiff to recover for injuries she sustained when through inattention, she allowed her vehicle to stray from the roadway onto a dangerously low shoulder and thereafter instinctly swerved immediately back onto the elevated road surface, where there was a 4 to 6 inch drop-off between the roadway and the shoulder. The Court in this case was able to distinguish Sinitiere on the basis of the fact that unlike the driver in Sinitiere, the plaintiffs in this case had no knowledge or notice of the shoulder defect before encountering it and had no reasonable opportunity to avoid it.
In the case before us, we know from the testimony of Mrs. Joy Morein that Martha Veillon had driven on La. Hwy. 29 many times prior to her accident. Mrs. Morein estimated that Mrs. Veillon had previously driven on this road at least three times a month, and that she had ridden with Martha Veillon on this road at least twenty times prior to the accident. Also, from the testimony of Mr. Olivier Broussard of the DOTD, we know that the particular shoulder in question was restored in 1977 and then again in 1979. According to Mr. Broussard, such restoration in 1979 was not normal or typical, in that most shoulders are not reconstructed for 20 to 30 years.
We have found no evidence in the record with which we can conclude that Martha Veillon had actual notice or knowledge of the defective condition of the shoulders. Furthermore, we are unable to charge Mrs. Veillon with constructive knowledge of the dangerous shoulders under the circumstances of this case due to the unusual and varying condition of the shoulder. Thus we cannot say that the trial judge was clearly wrong in finding that Martha Veillon was free of any negligence in causing the accident and that the DOTD was liable under *1239 the provisions of La.C.C. Articles 2315 and 2317.

ERROR NO. 3
The DOTD argues in its brief that the trial judge erred in admitting photographs taken at a point along La. Hwy. 29 which was different from the scene of the accident, and then allowing witnesses to testify as to the similarity of the condition depicted in the photographs and the condition of the shoulders at the scene of the accident. It claims that consideration of these photographs and testimony by the trial judge, over the objections of the DOTD's counsel, was highly improper and prejudicial. The Cullivans, on the other hand, retorted that the photographs were simply introduced in order to corroborate the witness' testimony first given.
The trial court in this case was presented with a great deal of testimony concerning the condition of the shoulder at the accident scene, other than the photographs introduced by the plaintiffs. From a reading of the trial judge's reasons for judgment, it is quite clear that he was well convinced that the shoulder in question was defective and that there was a significant drop-off from the pavement to the shoulder simply based on the testimony of the persons who witnessed the accident scene. In fact, the judge never once mentioned the photographs as influencing his decision in any way.
Even if we concluded that the photographs were improperly admitted into evidence by the trial judge, we would be unable to say that their admission prejudiced the defendant under these circumstances. At best, the trial judge's decision only constituted harmless, rather than reversible, error. We must say however that the introduction of these photographs under different circumstances than those contained in the record might have amounted to reversible error.

ERROR NO. 4
The DOTD claims that the trial court erred in refusing to allow any credit on the judgment rendered against it for amounts deposited into the registry of the Court by State Farm in its concursus. It claims that the court's failure to allow such credit was prejudicial and resulted in the plaintiff's recovering more than was warranted by the award of the trial court.
We cannot agree with the defendant's argument. There are no provisions in the concursus articles of the Louisiana Code of Civil Procedure (Articles 4651-4662) allowing a co-defendant who is held liable by the court to benefit from such proceedings. Furthermore, there is no reason to allow the DOTD, as the sole tortfeasor in this case, to benefit from the actions of State Farm as the insurer of a party that was ultimately absolved from liability by the trial court. We therefore find no error by the trial court in its refusal to credit the DOTD for funds distributed on State Farm's concursus.

ERROR NO. 5
The trial court in this case made the following awards of damages to the four Cullivan plaintiffs:
(1) To Marshall Cullivan, $150,000.00 for past and future pain and suffering and $350,000.00 for the loss of both of his legs.
(2) To Mable Cullivan, $75,000.00 for past and future suffering.
(3) To Alvin Cullivan, $20,000.00 for past and future pain and suffering, $40,000.00 for permanent partial disability, and $15,000.00 for lost wages.
(4) To Alton Cullivan, $15,000.00 for pain and suffering.
The court also awarded them recovery for all medical and hospital expenses they incurred as a result of the accident up to November 25, 1981, the date of the trial.
The defendant seeks to have these damage awards greatly reduced under the theory that they are grossly excessive, unsupported by the jurisprudence, and constitute an abuse of discretion by the trial judge. The Cullivans, however, answered the defendant's appeal, seeking an increase in their awards to those amounts originally requested by them in their petition.
*1240 The injuries incurred by Marshall Cullivan who was 63 years of age at the time of the trial were quite severe and extensive. The record reveals that he suffered a fractured left femur, a fractured right tibia, a fractured patella, multiple rib fractures, a lung contusion or compromised lung, and a laceration into the left elbow joint as a result of the accident. He was placed in traction and steel pins were inserted into his legs. He was also placed into a very long leg cast which extended up to his hips.
Shortly after Marshall was released from the hospital, he was re-admitted with gangrene in his feet due to poor circulation. While Marshall Cullivan was diagnosed as suffering from high blood pressure, osteosclerotic heart disease, and hypertensive cardiovascular disease prior to his accident, the arteries providing blood circulation to his legs became completely occluded following the accident. Doctor John Tassin, Marshall Cullivan's personal physician, testified that the accident and subsequent trauma were simply more than his circulatory system could handle, and this was what ultimately caused the gangrene to develop in his feet. Marshall Cullivan's legs were subsequently amputated due to this condition.
Doctor Tassin stated further that after the double amputations, Marshall Cullivan's cardiac prognosis was terrible. He was not allowed to wear prosthesis after the surgery, since it was determined that his heart could not stand the strain of his walking again. He was thus confined to a wheel chair for the remainder of his life. Marshall Cullivan apparently endured much pain and suffering, both physical and psychological, up to the day of his death on July 19, 1982, just a short time after the trial court rendered judgment in this case.
Mable Cullivan also sustained serious injuries in the accident. She fractured the posterior wall of the acetabulum, which is the socket part of the hip joint. She was placed in traction by having a pin inserted in the tibia bone of her leg. She also suffered a fracture of the left humerus, the bone between the elbow and the shoulder, as well as fractures of the 7th and 8th ribs and a bruised lung. Doctor John Tassin testified that at the time of the trial, Mable Cullivan was having difficulty with her left knee joint as a result of an infection which was draining at the point in her leg where the pin was inserted. She also had a small abcess on her tibia, chest and back pains, and osteoarthritic pains associated with the trauma she endured.
Alvin Cullivan was diagnosed as having a severe ankle fracture. Doctor Waldman, the doctor who performed surgery on his ankle, stated in deposition that Alvin's ankle fracture was one of the most difficult that he had ever repaired in his life. Screws were inserted into the ankle during the surgery to repair the joint. Alvin remained on crutches for several months thereafter. In addition to the fractured ankle, Alvin suffered abrasions to his forehead, a cut to his left elbow and a bruise on his left forearm. Doctor Waldman stated that Alvin would always have some limitation of motion in his ankle, and would have occasional pain or stiffness if he walked a long distance, tried to carry heavy loads, or went up and down steps or ramps.
Alvin Cullivan had been working for South Louisiana Contractors, Inc. (SOLOCO) up to the day before his accident and returned to work there on September 9, 1980, for approximately 13 weeks. Prior to his accident, he had been working on the average 50½ hours per week, whereas after the accident, he was only able to average 35 hours per week at $3.55 per hour.
Alton Cullivan was treated for a "blowout fracture" of the right eye socket after the accident. Surgery was performed to repair the fracture, requiring 45 minutes of careful and delicate disection. His condition was basically corrected by the surgery although his eye does have a tendency to drift outward. Other than this, he has apparently recovered from his injuries, even though he suffered pain and discomfort from the accident and surgery.
In Reck v. Stevens, 373 So.2d 498 (La. 1979), the Supreme Court commented with regard to the appropriate methodology for appellate review of awards for general damages:

*1241 "Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston Industries, Inc., 341 So.2d 332 (La. 1977)] for purposes of then determining what would be an appropriate award for the present case." (Footnote omitted).
Applying these principles to the case at hand, we cannot say that the trial court's award to each of the four Cullivan plaintiffs for the particular injuries and losses they suffered constituted a clear abuse of the trial court's discretion. So finding, and heeding the admonition of Reck as stated above, we therefore may not consider prior awards in order to determine what exactly would be an appropriate award in this case, and thus we will neither increase nor decrease the awards made by the trial judge to the Cullivans.

DECREE
For the above reasons, the judgment of the trial court dismissing the exception of prescription filed by the Department of Transportation and Development in response to the claims for damages made by Joy Veillon Morein and Burkeman Veillon contained in the amended third party petition of the Estate of Martha Veillon on November 23, 1981, be and the same is hereby reversed, and said claims are hereby dismissed. Likewise, the claim of the Estate of Martha Veillon for damages for the death of Martha Veillon is also dismissed. In all other respects, the judgment of the trial court is affirmed.
Costs at trial are hereby assessed in these proportions:
Seventy-five percent (75%) to the Louisiana Department of Transportation and Development, and twenty-five percent (25%) to the Estate of Martha Veillon.
Costs on appeal are assessed in the following manner:
Fifty percent (50%) to the Louisiana Department of Transportation and Development, twenty-five percent (25%) to the Estate of Martha Veillon, and twenty-five percent (25%) to the Cullivan plaintiffs collectively.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] The claims filed by the plaintiffs against Aetna Casualty and Surety Company and Government Employees Insurance Company were subsequently dismissed. These companies are not parties to this appeal.
[2] Footnote by Court of Appeal. It should be noted that La.R.S. 9:5801 has since been repealed by Act 274 of 1982, effective January 1, 1983.